# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DANIEL L. SMITH,

      Plaintiff,

v.                                                              Action No. 2:19cv559

KELVIN L. WRIGHT, *Chief of Police*,
*Chesapeake Police Department*,

and

CITY OF CHESAPEAKE,

      Defendants.

## UNITED STATE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim. ECF No. 8. The motion was referred to the undersigned United States Magistrate Judge on January 14, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 14. For the reasons discussed below, the undersigned recommends that the motion be **GRANTED in part** and **DENIED in part**.

## I.     PROCEDURAL HISTORY

On October 18, 2019, plaintiff, Daniel L. Smith ("Smith"), filed a two-count complaint against defendants, City of Chesapeake ("the City"), and Kelvin L. Wright ("Wright"), Chief of Police for the Chesapeake Police Department (collectively, "defendants"). ECF No. 1 at 1–2 ("Compl."). In count one, Smith alleges defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. Compl. ¶¶ 1, 117–45. More specifically, Smith alleges defendants' actions

violated his federal and state due process rights and liberty and property interests in his continued employment. *Id.* at ¶¶ 118, 126, 129.  In count two, Smith alleges that Wright tortiously interfered with Smith's business expectancy in his employment as a police officer with the Chesapeake Police Department ("CPD").  *Id.* at ¶¶ 146–59.

On December 17, 2019, defendants filed a motion to dismiss both counts of the complaint for failure to state claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as a memorandum in support of the motion.  ECF Nos. 8–9.  On January 7, 2020, Smith filed an opposition to defendants' motion to dismiss.  ECF No. 12.  Defendants filed a reply to Smith's opposition on January 13, 2020.  ECF No. 13.  After review of the parties' submissions, the Court concludes that a hearing is unnecessary, and this matter is ready for decision.  *See* Local Civil Rule 7(J).

## II.  FACTUAL BACKGROUND[1]

Smith was hired by the CPD in 1996 to serve as a police officer.  Compl. ¶¶ 6, 8.  After hiring Smith, the CPD issued him an identification card, which identified Smith as "a sworn law enforcement officer in the City of Chesapeake" and authorized him "to carry concealed weapons pursuant to state . . . and federal law."[2]  *Id.* at ¶¶ 9–10.

In describing his role, Smith cites to Virginia Code § 9.1-500, which defines a "'[l]aw enforcement officer' as "any person . . . who, in his official capacity, is (i) authorized by law to

---

[1] The facts detailed below are set forth in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (When addressing a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint.").

[2] Smith notes the reason his CPD-issued identification card authorized him to carry a concealed weapon may be found in 18 U.S.C. § 926(B) (finding that, because police officers encounter "potentially violent criminals, placing [them] in danger of grave physical harm" both on and off duty, it is "essential that [they] are able to defend themselves.").  Compl. ¶ 12.

make arrests[,] and (ii) a nonprobationary officer of . . . [t]he police department, bureau or force of any political subdivision," including the City of Chesapeake.  *Id.* at ¶ 20.  Smith alleges he was "charged with" enforcing the laws of Virginia and the City's municipal code.  *Id.* at ¶ 17.  The Commonwealth and the City require that all police officers, when enforcing the law, be in uniform or display a badge of authority at the time of enforcement.  *Id.* at ¶¶ 21–22 (citing Chesapeake, Va., Municipal Code § 74-6[3] and Va. Code § 46.2-102).

A.     **Disciplinary action and Brady letter**

At all times relevant to the complaint, Wright served as the Chief of Police and was responsible for directing the CPD and its employees.  Compl. ¶¶ 7, 18.  In 2014, Wright initiated a criminal and administrative investigation into Smith's handling of timekeeping records, and, on January 23, 2015, issued a disciplinary action "intended to terminate Smith's employment."  *Id.* at ¶¶ 29–30.  After this occurred, defendants demanded that Smith "relinquish his badge of authority, his Department-issued firearm, [and] his Department-issued uniform," and Smith complied.  *Id.* at ¶¶ 31–32.  Smith challenged the disciplinary action by filing a grievance pursuant to procedures previously established by the City in accordance with state law.  *Id.* at ¶¶ 23, 25, 33.

While Smith's grievance was pending, Wright "directed criminal investigators to disclose portions of their investigation to Chesapeake Commonwealth's Attorney Nancy G. Parr ("Parr"), requesting that Parr issue a "Brady Letter"[4] to Smith "under the pretext to 'complete his file.'"  *Id.* at ¶¶ 34–35.  As a result of Wright's actions, Parr issued a "Brady Letter" to Smith and placed him

---

[3]  The municipal code of Chesapeake, Virginia, may be found at the following site: https://library.municode.com/va/chesapeake/codes/code_of_ordinances?nodeId=PTIICOOR_CH 74TRVE (last visited May 4, 2020).

[4]  A "Brady Letter" refers to a document that identifies potential credibility issues associated with a witness, such as a police officer, in the event he is called to testify at trial.

on the "Brady List."  *Id.* at ¶¶ 36–39.   Smith alleges Wright "caused the Chesapeake Commonwealth's Attorney to place Smith on said Brady List and to issue said Brady Letter in an effort to justify the termination of Smith's employment."  *Id.* at ¶ 39.

Thereafter, however, the criminal investigation of Smith concluded without charges being filed.  *Id.* at ¶ 40.   Also, "the administrative investigation . . . uncovered evidence Smith did not commit a crime," and "Wright's request to have Smith placed upon the Brady List was unfounded."  *Id.*  at ¶¶ 41–42.

**B.**    **Grievance panel hearing and determination**

A grievance panel conducted a three-day hearing in July and August 2015.  *Id.* at ¶ 45.  On August 31, 2015, the panel "unanimously overturned the Disciplinary Action, [and] ordered Smith to be reinstated as a[] Police Officer with [the CPD]."  *Id.* at ¶ 46.  The grievance panel further determined there was "inadequate proof" that Smith had been untruthful in his timekeeping records, that the CPD's "policy follow through" was inconsistent, and that the CPD did not provide adequate discipline or guidance relating to employee timekeeping practices.  *Id.*

Notwithstanding the defendants' failure to challenge the panel decision, they refused to implement the reinstatement decision.  *Id.* at ¶¶ 52, 60.

**C.**    **Smith's "restricted duty" status following the grievance panel's determination**

By memorandum dated May 27, 2016, Wright placed Smith on "restricted duty," due to Parr's determination not to use Smith as a witness in criminal proceedings.  *Id.* at ¶ 63.  The CPD does not have a written policy governing the "restricted duty" status of its officers.  *Id.* at ¶¶ 64, 66.  Defendants have not reissued Smith his "badge of authority, a firearm, a uniform, or any other property required to be issued to a Police Officer by [the CPD]," and, therefore, Smith remains ineligible for the financial benefits and overtime opportunities available to all other police officers

employed by the CPD. *Id.* at ¶¶ 57–58; *see id.* at ¶ 157 (noting ineligibility for overtime). Accordingly, Smith is a police officer "in name only because he lacks any of the authority bestowed to a sworn law enforcement officer." *Id.* at ¶ 62.

**D.    Smith's petition to the Chesapeake Circuit Court to implement the grievance panel decision**

On January 11, 2017, Smith petitioned the Chesapeake Circuit Court to implement the grievance panel reinstatement decision. *Id.* at ¶ 67.  The court held a hearing on the matter on June 21, 2017, at which Parr and Wright testified. *Id.* at ¶¶ 68–70.  Parr stated the Criminal Investigation Division of the CPD notified her of Smith's "potentially criminal conduct" prior to September 2, 2014, and that, based on this information and information provided by defendants in February 2015, she placed Smith on the "Brady List" and instructed her staff not use Smith as a witness in any criminal proceeding. *Id.* at ¶ 69(a)–(d).  Parr testified she was aware of the grievance panel's decision to reinstate Smith, but that her decision to place him on the "Brady List" was based "solely" on information provided to her by defendants and the CPD. *Id.* at ¶ 69(f)–(i).  Parr added that the defendants never provided exculpatory information pertaining to Smith arising from either the investigations or the grievance hearing, but that she would revisit her decision to issue the "Brady Letter" if defendants supplied her with additional information. *Id.* at ¶ 69(j)–(k).

Wright testified that, approximately five months before the grievance hearing, he "specifically asked" Parr to issue the "Brady Letter" to Smith, placing him on the "Brady List." *Id.* at ¶ 70(a)–(c).  Wright further testified that, after weighing the grievance proceedings and decision, he determined Smith should not be reinstated as a police officer. *Id.* at ¶ 70(g)–(h), (j)–(k).  Further, that Smith is the only police officer with the CPD on "restricted duty," who has not been issued a badge of authority or firearm, "whose schedule and compensation is based upon a civilian forty-hour work week cycle," who is ineligible to perform overtime duties available to

5

other police officers, and who has no arrest powers.  *Id.* at ¶ 70(l)–(p), (s).  Wright testified that

Smith would be eligible for promotional opportunities.  *Id.* at ¶ 70(f).

The circuit court denied Smith's petition to implement the panel's determination.  *Id.* at

¶ 71.  Smith appealed that decision to the Supreme Court of Virginia, which refused Smith's

petition for appeal.  *Id.* at ¶¶ 73–74.

### E.  Failure to consider Smith for promotional opportunities at the CPD

In October 2017, the CPD had vacancies for the rank of sergeant, which Wright intended

to fill by October 22, 2017 ("first promotional opportunity").  *Id.* at ¶ 81.  On October 4, 2017,

despite his testimony at the circuit court hearing, Wright issued to the City's Director of Human

Resources a memorandum stating he would not consider Smith for any of the five vacancies

because

> Officer Smith has previous supervisory experience, but was
> terminated for conduct related to his employment.  He was
> reinstated as a police officer by a grievance panel.  However, his
> conduct was so egregious that I determined not to give him a gun or
> badge of authority.  We do not have any supervisory positions that
> would not require him to exercise police authority, therefore I would
> like to select the next candidate.

*Id.* at ¶¶ 83–84.  Consequently, Smith was "passed over for promotion," and Wright promoted two

other candidates on October 28, 2017.  *Id.* at ¶¶ 85–86.

In November 2017, Wright "named Smith to the role of Senior Police Officer."  *Id.* at ¶ 87.

However, because Wright continued to refuse to issue Smith a badge of authority, firearm, or

uniform, Smith's designation as a senior police officer was "in name only."  *Id.* at ¶ 91.  While

working at his duty station in this capacity, Smith was unable to arrest a fugitive who sought to

turn himself in and was unable to assist a complainant seeking a protective order due to domestic

violence.  *Id.* at ¶ 78(g)–(h).

In January, June, and September 2018, the CPD initiated three additional promotional processes to fill vacancies for the rank of sergeant ("second, third, and fourth promotional opportunities") in much the same manner as the first.  *Id.* at ¶¶ 93–111.  For each opportunity, Wright issued memoranda to the City's Director of Human Resources reiterating that he would not consider Smith for Sergeant for the same reasons stated above.  *Id.* at ¶¶ 94, 101, 108.  Consequently, Smith was not allowed to participate in the second, third, or fourth promotional opportunities, and Wright subsequently promoted other candidates to sergeant.  *Id.* at ¶¶ 96, 103, 110.

## III.    DISCUSSION

### A.    Standards applicable to a motion to dismiss for failure to state a claim.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule 12(b)(6) should be granted if a complaint fails to allege "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Accordingly, when reviewing a motion to dismiss, a court must "assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff," but it need not "accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions or arguments."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted).  Generally, a Rule 12(b)(6) motion to dismiss cannot reach the merits of an

affirmative defense, but, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense . . . clearly appear on the face of the complaint," an affirmative defense, including a defense based on the statute of limitations, may be reached on a motion to dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

On a motion to dismiss, a court is typically "limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint" by reference, or relied on by the plaintiff.  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (internal quotation marks and citation omitted).  It may, however, consider a document attached to the motion to dismiss when the document is "integral to and explicitly relied on in the complaint," and when the document's authenticity is unchallenged. *Zak*, 780 F.3d at 606.  Courts may also consider facts and documents subject to "judicial notice," which include facts "not subject to reasonable dispute," so long as the fact is "generally known within the court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.* at 607 (quotation marks omitted).  This includes public records, but they must be construed in the light most favorable to the plaintiff[]" and cannot be used as "evidence contradicting the complaint."  *Id.*

**B.**     **Smith has withdrawn his section 1983 claim against the City.**

After reviewing defendants' memorandum in support of their motion to dismiss,[5] Smith concedes that section 1983 does not provide for a right of action against the City.  Plaintiff's Mem.

---

[5] In short, defendants argue in their memorandum in opposition that, pursuant to *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Smith failed to indicate any specific Chesapeake custom, policy, or inaction that led to Smith's alleged constitutional violations.  Defs.' Mem. 15–17.  In fact, defendants identify an allegation in the complaint in which Smith "specifically alleges the *absence of a policy* as regards the actions Wright has taken toward him."  *Id.* at 16 (citing Compl. ¶¶ 64, 66, 70, 117).

in Opp'n to Mot. to Dismiss ("Pl.'s Mem."), ECF No. 12 at 5.  For that reason, Smith withdraws

his claim against the City.  Accordingly, the defendants' motion to dismiss Smith's section 1983

claim against the City should be **DENIED as moot**.

Defendants also seek to dismiss Smith's official-capacity claim against Wright in count

one as duplicative, because count one is also brought against the City, and a suit against a

municipal agent in his or her official capacity is treated as a suit against the municipality itself.

Defendants' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), ECF No. 9 at 4–5 (citing

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  However, because Smith has withdrawn his

section 1983 claim against the City, defendants' motion to dismiss Smith's official-capacity claim

against Wright in count one as duplicative should also be **DENIED as moot**.  *See* Pl.'s Mem. 15

(noting Smith seeks relief against Smith in his official capacity to pursue injunctive relief); *see*

*also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (noting that an official

capacity suit against a state official for injunctive relief qualifies as one brought against a "person"

under section 1983).

## C.     Smith's property interest in continued employment as a police officer does not extend to the incidents of such employment alleged in the complaint.

In count one, Smith alleges violations of his procedural due process rights based on a

property interest "in his continued employment as a sworn law enforcement officer" with the CPD.

Compl. ¶¶ 117–45.  Defendants seek to dismiss this claim, arguing Smith has not asserted any

valid property interest in continued employment or in financial benefits or promotional

opportunities at the CPD.  Defs.' Mem. 17–20.  Defendants argue Smith has not alleged the

existence of any independent source creating a property interest, such as an employment contract

"of finite duration terminable only for cause," and therefore, under Virginia law, he is presumed

to be an at-will employee whose employment is terminable by either the employer or employee

"for any reason upon reasonable notice." *Id.* at 18–19 (quoting *Cty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001)). Defendants argue that Virginia statutes providing for grievance procedures for certain government employees do not give rise to an employment contract or employment relationship terminable only for cause. Defs.' Reply to Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 13 6. Additionally, defendants argue that Smith's reinstatement following the grievance panel determination did not "convert Smith's employment with the City from an at-will relationship into a vested property interest, nor has Smith alleged any facts supporting that it did." Defs.' Mem. 19.

Although recognizing Virginia's adherence to a presumption of at-will employment, Smith argues he has rebutted the presumption. Pl.'s Mem. 5–6. Smith asserts that the grievance procedures adopted by the City, as well as those provided by the Code of Virginia for law enforcement officers, preclude Wright from disciplining or terminating him, by converting his at-will employment to employment terminable only for cause, and establishing a property interest in his continued employment. Compl. ¶¶ 15, 24–28, 133–38; Pl.'s Mem. 5–9. Lastly, Smith asserts that the grievance panel's decision ordering his reinstatement, as well as his continued employment with CPD, establishes that he is not an at-will employee, and show that the applicable grievance procedures support his claim to a legitimate property interest. Pl.'s Mem. 7; *see also* Compl. ¶ 125 (noting that the grievance panel's reinstatement decision foreclosed Wright's ability to discipline him for the alleged misconduct giving rise to the grievance).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Am. XIV. The Due Process Clause contains both a substantive and procedural component. *Compare Washington v. Glucksberg*, 521 U.S. 702, 719–21 (1997) (substantive due

process), *with Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976) (procedural due process).  The procedural component of the Due Process Clause prohibits states from taking actions that deprive a citizen of "liberty" or "property" interests without adequate process, which includes the citizen being afforded notice and a right to be heard.  *See Mathews*, 424 U.S. at 332.

To state a procedural due process claim, a plaintiff must show that:  (1) he had a protected liberty or property interest; (2) the state or its agents deprived him of this interest; and (3) the process by which the deprivation occurred was constitutionally inadequate.  *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).  In this way, it is only "after finding the deprivation of a protected interest" that a court will determine whether the state's procedures comported with due process.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

An individual alleging a property interest in his continued employment must demonstrate "more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  As the Fourth Circuit observed in *Kersey v. Shipley*, "property interests in employment positions are not created by the Constitution, but rather, are created and their dimensions defined by independent sources such as state law, local ordinances, and employment contracts."  673 F.2d 730, 732 (4th Cir. 1982); *see Beck v. City of Durham*, 129 F. Supp. 2d 844, 850 (M.D.N.C. 2000) ("The existence of a property right to continued employment must be decided under the applicable state law.").

In Virginia, an employee is presumed to be at-will unless there is evidence to the contrary. *See Greene v. Nat'l Head Start Ass'n, Inc.*, No. 1:09cv546, 2010 WL 1779677, at *4 (E.D. Va. Apr. 30, 2010) (citing *Dray v. New Mkt. Poultry Prods., Inc.*, 518 S.E.2d 312, 313 (Va. 1999)). Rebutting the presumption requires an employee to come forward with "sufficient evidence . . . to

show that the employment is for a definite, rather than an indefinite, term," including by evidence showing, for example, that an employer "could only dismiss [an] employee for cause." *Wines*, 546 S.E.2d at 723; *see also Morris v. City of Danville*, 744 F.2d 1041, 1047 (4th Cir. 1984) ("[I]f a contract provides for termination only for good cause, the employment is not at will and does give rise to a protectible property interest") (citations omitted).

Smith relies on Virginia Code sections 9.1-500–507 and 15.2-1506–1507, and the City's grievance procedures adopted pursuant to the latter provisions, as the sources of his property interest in his continued employment with the CPD. Sections 9.1-500–507 codify the Law-Enforcement Officers Procedural Guarantees Act ("OPGA"). OPGA's provisions apply whenever an agency conducts an investigation that could result in an officer's dismissal or demotion, and requires notification in writing, the right to file a grievance, and the right to a hearing before a grievance panel before dismissal. Va. Code §§ 9.1-501, 9.1-502(A)(1), (4), 9.1-504. A decision rendered by an OPGA's grievance panel is only an advisory, non-binding recommendation. Va. Code § 9.1-504(D).

Virginia law also requires that localities having more than fifteen employees create their own employee grievance procedures. Va. Code § 15.2-1506. The City's employee grievance procedures are set forth in administrative regulation number 2.07.[6] ECF No. 12-1 (noting an effective date of July 16, 2004). Pertinent to this dispute, those procedures authorize all full-time, non-probationary employees, including police officers, to file grievances, as defined in the procedures. ECF No. 12-1 at 1, 3–4. A police officer with a grievance, however, must elect

---

[6] Smith attached administrative regulation number 2.07 to his opposition memo, ECF No. 12-1, and his complaint contains allegations about the regulation. Compl. ¶¶ 24–27, 49–50, 122. Because the regulation and the City's grievance procedures are integral to the complaint, they may be properly considered in addressing the pending motion. *See Zak*, 780 F.3d at 606–07.

whether to pursue that grievance using the procedures specified in OGPA, *see* Va. Code §§ 9.1-500–9.1-507, or the City's grievance procedures. *See* Va. Code § 9.1-502(B) (specifying that a "law-enforcement officer may proceed under either the local governing body's grievance procedure or the law-enforcement officer's procedural guarantees, but not both."); Va. Code § 15.2-1507(A)(3)(a)(7) (referring to the election specified in Va. Code § 9.1-502(B)).  After completing certain preliminary steps, an employee pursuing a grievance pursuant to the City's procedures may request a hearing before a three-member grievance panel.  ECF No. 12-1 at 6–8.  When, as alleged here, the grievance concerns a disciplinary action, the grievance panel is vested with authority to "uphold or void the disciplinary action," including the authority "to order the reinstatement of [an] employee."  *Id.* at 8, 10.  The regulations specify that decisions of a grievance panel are "final and binding and shall be consistent with provisions of law and written policies."  *Id.* at 8 (noting also the parties' right to have the City Manager address challenges to whether a panel decision is consistent with law and policy).  Finally, the City's grievance procedures authorize either party to petition the circuit court "for an order requiring implementation of the decision of the Panel."  *Id.* at 10; *see* Va. Code § 15.2-1507(A)(11).

The Court recites these procedures because, although the complaint alleges Smith's property interest flows from both OPGA and the procedures adopted by the City pursuant to sections 15.2-1506–15.2-1507, and the ensuing panel decision, the complaint makes clear Smith elected and filed a grievance under the City's grievance procedures.  Compl. ¶¶ 28 (noting "final and binding" panel decision, 46 (noting order of reinstatement), 49–53 (discussing City grievance procedure), 67 (noting circuit court petition to implement).  A panel decision issued pursuant to OPGA would not have been "final and binding," and Smith could not have sought implementation

of the same in circuit court.  Va. Code § 9.1-504(D) ("The recommendations of the hearing panel . . . shall be advisory only, but shall be accorded significant weight.").

Therefore, the Court must determine whether the City's grievance procedures, and the statutory provisions giving rise to them, create for Smith a property interest in continued employment.  *Sansotta*, 724 F.3d at 540.  In *Himmelbrand v. Harrison*, 484 F. Supp. 803, 805–06 (W.D. Va. 1980), a police officer who alleged he had been forced to resign over suspected misconduct requested a grievance hearing, but the chief of police "declined to honor" the officer's request.  Defendants argued the officer's "voluntary resignation was beyond the coverage of the statutory grievance procedure."  *Id.* at 807.  The officer contended the "procedural safeguards of the [OGPA] . . . themselves g[a]ve rise to a 'legitimate claim of entitlement'" and constituted a property interest in his employment.  *Id.* at 807–08.  The court found that OGPA "offers Virginia policemen more than a 'unilateral expectation' that their employment will not be arbitrarily terminated," and concluded that OPGA "gives Virginia's policemen a legitimate claim of entitlement to continued employment at least to the extent that it furnishes insurance against arbitrary employment actions."  *Id.* at 808 (internal quotation marks and citation omitted).

Similarly, in *Detweiler v. Commonwealth of Va. Dep't of Rehab. Servs.*, a non-probationary, state employee alleged he held a property interest in his continued employment.  705 F.2d 557, 558 (4th Cir. 1983).  The Fourth Circuit analyzed Section 7:10 of the Rules for the Administration of the Virginia Personnel Act ("VPA"), which provided non-probationary employees with the right to grieve dismissals.  *Id.* at 559–60.  The VPA further specified minimum elements of the grievance procedure, including a hearing by an impartial, three-person panel.  *Id.* at 559.  Under the VPA, the panel's decision is "final and binding on both the employee and the state agency which discharged him," and it may "remedy an unjustified discharge by reversing the

14

agency's action and ordering reinstatement with back pay and restoration of benefits." *Id.* The Fourth Circuit found that these statutory and regulatory provisions, along with the employer's policy statements, "disclose[d] that a nonprobationary employee does not serve at the will of the agency that employs him." *Id.* at 559–60. Further, the court found that the statute's distinction between "probationary employees and nonprobationary employees, . . . and the authority conferred on an impartial panel to reverse the agency's decision and to order reinstatement" established that a "nonprobationary employee has a property interest in continued employment that is created by the state." *Id.* at 560; *see also Va. Dep't of Corrections v. Compton,* 623 S.E.2d 397, 406 n.9 (Va. Ct. App. 2005) (noting that the VPA, in conjunction with state grievance procedures and a human resources manual, vested non-probationary, classified employees of the Department of Corrections with a property interest in continued employment).

These decisions lead the Court to conclude that the City's grievance procedures, and the statutory backdrop giving rise to them, vest Smith with a property interest in his continued employment, such that his employment could not be arbitrarily terminated. Unlike the OPGA procedures at issue in *Himmelbrand* found to give rise to a property interest, the City's procedures not only gave Smith the right to grieve his dismissal, but also to pursue that grievance through a panel decision that would be final and binding upon the City. *See* ECF No. 12-1 at 10; Va. Code § 15.2-1507(A)(10)(a)(6). Further, the City's procedures and the panel's authority are sufficiently analogous to those addressed by the Fourth Circuit in *Detweiler* and found to create a property interest in continued employment.

This conclusion, however, does little to advance Smith's case. Notwithstanding his allegation that he "cannot be a Police Officer . . . because he lacks any of the authority bestowed to a sworn . . . officer," Compl. ¶ 62, it is evident from the complaint (and the parties' briefs) that

Smith is currently employed by the CPD.  *See, e.g.,* Compl. ¶¶ 57–58, 63, 87.  Stated simply, Smith's interest in his continued employment is not actionable because he has not yet been deprived of that employment.  *See Echtenkamp v. Loudon Cty. Pub. Schs.*, 263 F. Supp. 2d 1043, 1053–54 (E.D. Va. 2003) (finding that a school psychologist failed to demonstrate the deprivation of a property right because she remained employed by the same school system and continued to receive full compensation).

Because he remains employed, the question is whether Smith has a property interest in any additional rights allegedly incident to that employment.  Smith alleges that the grievance procedures and the panel decision reinstating him warrant the conclusion that he possesses property interests in serving as a full-fledged police officer (with a badge, firearm, uniform, and other CPD-issued property), in receiving financial benefits, including overtime, and in competing for promotional opportunities.  Compl. ¶¶ 57–58, 62–63, 80–115, 128, 137, 141–142.

The facts and the caselaw do not support Smith's position.  In *Fields v. Durham*, the Fourth Circuit communicated its reluctance to recognize "multiple property interests within the same employment relationship."  909 F.2d 94, 98 (4th Cir. 1990).  Although the plaintiff argued "that within the property interest in employment created by state law exist[ed] numerous entitlements within entitlements to perform specific functions," the Court held that the "constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services."  *Id.*  Similarly, the Supreme Court of Virginia has determined that a "City employee . . . does not have a vested right to remain in a personnel classification indefinitely." *Zicca v. City of Hampton*, 397 S.E.2d 882, 883 (Va. 1990).

Also, unless an employee can indicate some statutory or regulatory section entitling him to promotion, he does not have any "legitimate expectancy of promotion, such that a property interest

in promotion would be created." *James v. Powell*, 765 F. Supp. 314, 317–18 (E.D. Va. 1991) (finding the VPA did not create a property interest in promotion even though it provided for a grievance process for "failure to promote where established promotional procedures are not followed or applied unfairly"); *see also Hatley v. City of Charlotte*, 826 F. Supp. 2d 890, 901 (W.D.N.C. 2011) (holding that plaintiff's property interest in her employment only included entitlement to a promoted position because she had *already* been promoted to it).

In *Hall v. City of Newport News*, the Court found a police officer had not been deprived of the property interest in his employment by being stripped of his arrest and police powers and re-assigned to a civilian position upon reinstatement by a grievance panel. *See* No. 4:09cv136, ECF No. 24 at 4, 20–22 (E.D. Va. Apr. 30, 2010). Despite the officer's change in position and loss of police power, the Court observed he had not alleged a decrease in compensation. *Id.* at 20–22. Thus, the Court concluded, "loss of authority and responsibility, absent a reduction in compensation, do not constitute a deprivation of a plaintiff's property right in continued employment." *Id.* at 21 (citing *Echtenkamp v. Loudon Cty. Pub. Schs.*, 263 F. Supp. 2d 1043, 1054 (E.D. Va. 2003)). Alternatively, the Court noted that the Newport News City Code also vested in management the right to "establish job duties, job descriptions and job requirements," as well as to "assign and direct the work of employees," and reasoned Hall therefore could not have a property interest in "controlling his work functions" such as position and authority. *Id.* (quoting Newport News City Code Section 2-183).

Smith does not have a property interest in the alleged entitlements incident to his employment as a police officer—arrest and police power, promotions, overtime compensation. The City's grievance procedures at issue here reserve to management "the exclusive right to manage the affairs and operations of local government," including the CPD. ECF No. 12-1 at 2.

17

Wright, as the "chief law-enforcement officer" tasked with "administer[ing]" the CPD, is a manager of the CPD, and is thereby authorized to manage the affairs of his officers, consistent with those procedures.  Va. Code § 15.2-1701; *Chesapeake Mun. Code* (Va.) § 7.02, available at https://law.lis.virginia.gov/charters/chesapeake (last visited May 4, 2020); *see* Compl. ¶¶ 7, 18 ("The Department and its employees act under the direction of Wright").

The City's grievance procedures give effect to the right to manage affairs and operations by precluding employee grievances about:  (1) the setting and revising of salaries, position classifications, and general employee benefits; (2) work activities deemed accepted as conditions of employment and reasonably expect to be a part thereof; (3) the "methods, means and personnel by which City operations are to be carried on"; (4) the assignment and promotion of City employees; and (5) the failure to promote an employee, unless the employee can show the City disregarded or unfairly applied its policies on promotion.[7]  ECF No. 12-1 at 2.

These provisions closely track the city code detailed in *Hall*, in which the Court found plaintiff's transfer to a civilian position and withholding of police power did not deprive him of any property right to continued employment because such alleged deprivations were actions authorized by local ordinance and reserved for management.  *Hall*, No. 4:09cv136, ECF No. 24 at 21–22.  The same conclusion applies here.  Smith also does not have a property interest in his position or "personnel classification," and has not alleged any local or state law granting him an

---

[7] Chesapeake Municipal Code section 2-280 specifies that police and fire employees may be promoted based on "merit, competence and fitness," and that promotions "shall be open to all employees who meet the eligibility requirements established by the city manager for promotion within their respective departments."  In alignment with section 2-280, Smith alleges in his complaint that Wright refused to consider him for promotion based on his "egregious" conduct, placement on the Brady List, and the Commonwealth Attorney's decision not to use Smith as a witness in criminal proceedings.  Compl. ¶¶ 63, 70(i), 83, 94, 101, 108.

interest in promotional opportunities.  *See Zicca*, 397 S.E.2d at 883; *James*, 765 F. Supp. at 317–18.

As in *Hall*, although allegedly reinstated without arrest and other police powers, Smith remains employed by the CPD, and has not alleged that his prior salary was reduced.[8]  *Hall*, No. 4:09cv136, ECF No. 24 at 22; Compl. ¶¶ 57–58, 63; Pl.'s Mem. 7.  In fact, the circuit court's decision[9] indicates that Smith was reinstated "on September 2, 2015 . . . [at a salary] of a police officer commensurate with his tenure with the City."  ECF No. 9-2 at 2.

Accordingly, both the law and the facts alleged fail to support Smith's claim to property interests affected by his placement on "restricted duty" and the consequent withholding of police power, financial benefits, overtime work, and promotional opportunities.  Therefore, and because Smith remains employed with CPD, the defendants' motion to dismiss count one for failure to state a claim for deprivation of a valid property interest should be **GRANTED**.  In the absence of any defense motion to dismiss count one as to Smith's alleged deprivation of liberty interest, *see* Compl. ¶ 126, that claim survives the pending motion.

---

[8] Smith alleges he is ineligible for financial benefits, including overtime opportunities, but the inability to supplement one's compensation differs from a reduction in compensation.  Compl. ¶¶ 58, 157.

[9] Smith's complaint cites to the circuit court's decision.  *See, e.g.,* Compl. ¶¶ 67–73.  The circuit court's ruling and order, which were attached to defendants' motion, are integral to the complaint, subject to judicial notice, and not subject to dispute as to their contents.  *See Zak*, 780 F.3d at 606–07; Fed. R. Evid. 201.  As the complaint alleges Smith works for CPD in a "restricted duty" status as a "Senior Police Officer," the circuit court ruling merely clarifies, rather than contradicts, Smith's allegations concerning his eligibility for financial benefits.  Compl. ¶¶ 57, 88, 127.

**D.    Other than Wright's refusals to consider Smith for promotion, the remainder of Smith's claims in count one are barred by the statute of limitations.**

The foregoing recommendation concerning count one arguably partly obviates the need to address defendants' alternative argument that count one should be dismissed on statute of limitations grounds.  Assuming for the sake of argument that count one stated a claim for deprivation of a property interest, and because Smith also alleges a deprivation of a liberty interest, the Court will address whether count one is barred by the statute of limitations.

First, because, with one exception, all of the facts necessary to the affirmative defense are set forth in the complaint the Court may address defendants' motion to dismiss count one on statute of limitations grounds.  *See Goodman*, 494 F.3d at 464.

Second, the Court rejects Smith's argument that a five-year statute of limitations applies to count one.  Pl.'s Mem. 9–10.  The applicable two-year statute of limitations for personal injury actions under Virginia law governs.  *See* Va. Code § 8.01-243(A); *Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (directing courts considering section 1983 claims to "borrow the [state's] general or residual statute [of limitations] for personal injury actions"); *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985) ("holding that § 1983 claims are best characterized as personal injury actions"). Smith's argument that the five-year limitations period contained in section 8.01-243(B) of the Virginia Code applies because his section 1983 claims involve a property interest has been rejected by this Court.  *See Harris v. Obenshain*, 452 F. Supp. 1172, 1176–77 (E.D. Va. 1978) (applying a two-year statute of limitations to federal civil rights claims predicated upon deprivation of property rights); *see also Morgan v. Town of Mineral*, No. 3:11cv65, 2012 WL 5464633, at *4–5 (W.D. Va. May 4, 2012) (applying a two-year statute of limitations to section 1983 claims pertaining to demolition of plaintiff's property).  Therefore, because Smith filed his complaint on October 18, 2019, any cause of action that accrued prior to October 18, 2017 is untimely.

Third, federal law governs when the two-year statute of limitations began to run.  *Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 388 (4th Cir. 2014).  The "standard rule [is] that accrual occurs when the plaintiff has a complete and present cause of action" against a defendant.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks and citation omitted).  A procedural due process "constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."  *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Smith effectively availed himself of the process to which he was entitled pursuant to state law and the City's grievance procedures resulting in the panel decision that he should be reinstated.  Compl. ¶¶ 45–47.  Therefore, to the extent that Smith complains about actions preceding, and allegedly not remedied by, the final and binding grievance panel decision of August 31, 2015, those actions are well outside the statute of limitations.  *See Del. State Coll. v. Ricks*, 449 U.S. 259, 261 (1980) (holding "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the [section 1981] limitations period"); *Kelly v. City of Chicago*, 4 F.3d 509, 512–13 (7th Cir. 1993) (applying *Ricks* and noting that "[t]he availability of a state appeals process had no different effect on the accrual date than the availability of the grievance procedures in *Ricks*.  Just because the state believed that fairness compelled it to allow judicial review of its decision . . . does not mean that the date of injury is postponed until the exhaustion of the appeals process"); *see also Doe v. VPI*, 400 F. Supp. 3d at 490–93 (applying *Ricks* to a section 1983 procedural due process claim).

Fourth, this leaves Smith's alleged claims, arising after exercise of his procedural remedies, relating to:  (1) his placement on "restricted duty" status on May 27, 2016, and the associated withholding of regular assignments and financial benefits, a badge, uniform, and other property

(Compl. ¶¶ 57–58, 63, 127, 156–68); and (2) Wright's refusals to consider Smith for promotional opportunities on October 4, 2017, January 17, 2018, June 11, 2018, and September 19, 2018 (Compl. ¶¶ 83, 94, 101, 108).

Wright's decision to place Smith on restricted duty on May 27, 2016 falls outside of and is barred by the statute of limitations.[10]  Wright's three decisions not to consider Smith for promotion made after October 18, 2017, all fall within the statute of limitations and are timely filed.[11]  Finally, drawing all reasonable inferences in Smith's favor, and looking only to the face of the complaint, the allegations concerning the first refusal to promote in October 2017 do not permit the Court to assess when Smith knew or had reason to know that Wright had decided not to promote him. *Compare* Compl. ¶ 83 (noting Wright issued a memorandum to that effect to the Director of Human Resources on October 4, 2017) *with* Compl. ¶ 86 (noting Wright promoted two other candidates on October 28, 2017); *see Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (looking to when a section 1983 claimant knew or had reason to know about an injury to one's rights).  Accordingly, defendants' motion to dismiss count one on statute of limitations

---

[10] Although it makes no difference to the outcome, even if the Court construed the circuit court implementation review to provide for additional process relative to the May 27, 2016 decision to place Smith on restricted duty (with its attendant consequences), the circuit court denied Smith's motion for implementation on August 7, 2017. ECF No. 9-3 at 1–2; *see also* ECF No. 9-2.  Smith's ability to challenge that decision on appeal did not extend the statute of limitations.  *See Ricks*, 449 U.S. at 261; *Kelly*, 4 F.3d at 511–13; *Doe v. VPI*, 400 F. Supp. 3d at 490–93.  Thus, his action still accrued before October 18, 2017.

[11] The Court rejects Smith's argument that the promotion decisions reopen the door for contesting consequences attendant to Wright's decision to place him on restricted duty.  Pl.'s Mem. 11 (discussing refusal to issue firearm and badge).  Those consequences stemmed from the decision to place Smith on restricted duty, and any cause of action related thereto accrued at that time.  The Court also rejects Smith's contention that defendants waived a statute of limitations defense by failing to raise it in circuit court.  *Id.* at 11 n.4.  By statute, the circuit court was authorized only to grant or deny implementation of the grievance panel decision.  Va. Code § 15.2-1507(A)(11).

grounds should be **GRANTED IN PART** and **DENIED IN PART**.[12]  The motion is **DENIED**

with respect to Wright's refusals to consider Smith for promotional opportunities in October 2017,

January 2018, June 2018, and September 2018.

**E.      Count two's tortious interference with a business expectancy claim should be dismissed because Wright is not a third party to Smith's business expectancy and Wright acted within the scope of employment in the matters at issue.**

Count two alleges Smith had a "valid business expectancy in his employment as a sworn

Police Officer" and that Wright wrongfully interfered with that expectancy by:  (1) "refusing to

implement the Grievance Panel Determination"; (2) "improperly causing Smith to be placed on . .

. the Brady List"; (3) "providing false or otherwise misleading information to the . . .

Commonwealth's Attorney . . . to adversely affect Smith's employment with the [CPD]"; (4)

withholding information from the . . . Commonwealth's Attorney in an effort to adversely affect

Smith's employment with the [CPD]"; and (5) "refusing to reissue Smith a badge of authority, a

firearm, and a uniform."  Compl. ¶¶ 147, 153.

Wright argues Smith fails to state a claim for tortious interference with a business

expectancy ("tortious interference") because he has failed to allege a valid business expectancy

with Wright or Parr, the Commonwealth's Attorney.  Defs.' Mem. 20, 24–25.  Wright argues

---

[12] Defendants also argue Smith's section 1983 claim in count one should be dismissed due to collateral estoppel, or issue preclusion.  Defs.' Mem. 7–15.  To the extent collateral estoppel is still available to defendants following the Fourth Circuit's decision in *Passaro v. Virginia*, it does not apply here.  935 F.3d 243 (4th Cir. 2019) (holding claim preclusion did not bar Title VII claim, and noting "[w]e do not decide the availability or scope of issue preclusion, which is not before us").  To the extent that Smith retains a section 1983 liberty interest due process claim following the Court's ruling, it remains only in relation to the four refusals to promote discussed above.  *See* Compl. ¶¶ 86, 94, 101, 108.  Because the circuit court's ruling of August 7, 2017 preceded each of those matters, ECF No. 9-3 at 2, the facts at issue relating to those actions were not actually litigated in or essential to the circuit court's judgment.  *See Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (discussing elements of collateral estoppel).  Accordingly, defendants' motion to dismiss count one on the basis of collateral estoppel should be **DENIED**.

tortious interference requires a competitive relationship between the party interfered with and the interferor, and there is no competitive relationship between Smith and Wright. *Id.* at 21–23 (citing *17th St. Assocs., LLP, v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005)). Further, Wright contends that, due to the existence of an agent-principal relationship—"Smith is an agent of his principal, Wright, and both Wright and Smith are agents of their principal, the City"—Wright could not have interfered with Smith's business expectancy as a third party or outsider. Defs.' Mem. 23–24; Defs.' Reply 11 (citing Compl. ¶¶ 7, 14, 18). In response to Smith's argument that Wright employed improper methods to intentionally interfere with Smith's business expectancy and, thereby acted outside the scope of his employment, Wright argues he acted within the scope of his employment. Defs.' Reply 11–12.

Smith identifies his claim as a tortious interference with a business expectancy, not a contract. Pl.'s Mem. 16. Regardless of his status as an employee, Smith argues that he has sufficiently alleged that Wright interfered by improper means with Smith's business expectancy. *Id.* at 17–19 (citing Compl. ¶¶ 30–42, 61, 63–66, 69–70, 72, 77–78, 83, 94–95, 101–02, 108–09, 153, 157). Smith asserts that Wright, in seeking to prevent his full reinstatement as a police officer, acted outside the scope of his employment. Pl.'s Mem. 21. Smith further argues that the grievance panel decision constituted an "order from [an] outside, independent panel," which created a business expectancy in his employment as a police officer. Pl.'s Mem. 20–21 (citing Compl. ¶¶ 26–28). Because of that order, Smith contends Wright is "no longer a party to Smith's business expectancy of employment as a police officer . . . [and] lacks any lawful authority to prevent Smith's reinstatement as a police officer." *Id.* at 21 (citing Va. Code § 15.2-1507(A)(10)(a)(6), which dictates that the grievance panel determination "shall be final and binding").

A claim for tortious interference with a business expectancy, as opposed to a contract, requires a claimant to demonstrate:  (1) the existence of a valid business relationship of expectancy, "with a probability of future economic benefit"; (2) knowledge of the relationship or expectancy; (3) reasonable certainty that, absent intentional misconduct, "the claimant would have continued in the relationship or realized the expectancy"; and (4) damage as a result of the interference. *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001); *see Glass v. Glass*, 321 S.E.2d 69, 77 (Va. 1984) (establishing the elements of tortious interference with a business expectancy in Virginia); *see also Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (setting out the elements for both tortious interference with contractual relations and with a business expectancy or prospective economic advantage).

Additionally, when a plaintiff asserts only a business expectancy, he must also establish that the defendant employed improper means or methods when engaging in the intentional, interfering misconduct.[13]  *Dunlap. v. Cottman Transmissions Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014).  "Improper methods" include unfair competition, unethical conduct, sharp dealing, misuse of confidential information, and the breach of a fiduciary relationship.  *See Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143–44 (4th Cir. 2014); *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 337 (E.D. Va. 2007); *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 349 (E.D. Va. 1995).  The types of improper methods listed above, while not

---

[13] In *Maximus, Inc. v. Lockheed Information Management Systems*, the Supreme Court of Virginia indicated that "not all business relationships are entitled to the same level of protection."  493 S.E.2d 375, 378 (Va. 1997).  A business expectancy is entitled to fewer protections than a contractual relation not terminable at-will, as reflected in the additional requirement for proof of interference by improper means or methods.  *Id.*

imposing a requirement that the party interfered with and the interferor be competitors, are grounded in notions of fair and unfair competition.

Wright's argument that Smith's business expectancy in his continued employment cannot be reasonably certain does not align with the grievance panel decision, Virginia Code section 15.2-1507, the City's grievance regulations, and this Court's determination in count one that Smith has a property interest in his continued employment with the CPD. Based on the Court's analysis of count one, Smith has sufficiently alleged a valid business expectancy, of which Wright had knowledge, and thereby satisfies the first and second elements of his claim.[14]

Wright's remaining arguments coalesce around the third element of the claim, which requires proof of intentional interference by improper means with a business expectancy or relationship with another. Defs.' Mem. 24; Defs.' Reply 10–12. Wright argues that a claim for tortious interference requires proof that a competitive relationship exists between the interferor (Wright) and the party interfered with (Smith). Defs.' Mem. 21–23. No such relationship exists here, Wright contends, because Smith, as a subordinate of the police chief, is an agent of Wright, his principal, and both Smith and Wright are agents of their principal, the City. *Id.* at 23–25. In essence, Wright argues that because Smith and Wright are parties to a common relationship, Wright could not have intentionally interfered in Smith's relationship with a third party. The Court agrees.

Tortious interference requires interference in a plaintiff's relationship with another, rather than in plaintiff's relationship with the defendant or his principal. *See Dunlap*, 754 S.E.2d at 319

---

[14] Wright also challenges Smith's lack of a business expectancy in his relationship with the Commonwealth's Attorney. Defs.' Mem. 24–25. Wright's argument is irrelevant, however, because Smith has not alleged such an expectancy in his complaint. *See* Compl. ¶¶ 146–59; Pl.'s Mem. 15–21.

("[T]ortious interference with [a] business expectancy [is an] intentional tort[] predicated on the common law duty to refrain from interfering with another's . . . business relationship.").   An individual cannot interfere in a relationship of which he is a part.  *See Francis Hosp., Inc. v. Read Properties, LLC*, 820 S.E.2d 607, 610 n.4 (Va. 2018) (collecting cases from other jurisdictions indicating that one may only interfere if he is a "stranger to the contract," or an "outsider[] who interfere[s] with the contractual expectancies of others") (citations omitted).[15]

Where the party interfered with and the alleged interferor are in a principal-agent relationship, the interferor is not considered a third party and, therefore, a claim of tortious interference with a business expectancy cannot lie.  *See Francis Hosp.*, 820 S.E.2d at 610; *Livia Prop., LLC v. Jones Lang LaSalle Americas, Inc.*, No. 5:14cv53, 2015 WL 4711585, at *6–7 (W.D. Va. Aug. 7, 2015) (collecting cases holding that an agent cannot be liable for tortious interference with a business expectancy to which his principal was a party); *Ashco Int'l Inc. v. Westmore Shopping Ctr. Assocs.*, No. 147609, 1997 WL 1070624, at *5 (Va. Cir. June 19, 1997) ("A principal and an agent are not separate persons for purposes of a . . . tortious interference action"). In that vein, the second element of tortious interference with a business expectancy, requiring that the interferor have knowledge of the existence of the business expectancy, would be meaningless if it related to a business expectancy of which the interferor was already a part.

---

[15] *See also Maximus, Inc.*, 493 S.E.2d at 378 (quoting Restatement of Torts that "interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation"); *Chaves v. Johnson*, 335 S.E.2d 97, 103 (Va. 1985) (discussing the need to balance interests in the protection of an existing business relationship or expectancy against the interferer's interest in freedom of action, and describing the tort as "an intentional wrong to the property rights of another . . . employed in pursuance of a scheme designed wrongfully to enrich the [interferor] at the expense of the victim").

At all times relevant to the complaint, Wright was the Chief of Police of the CPD.  Compl. ¶ 7.  As the Chief of Police, Wright was the principal responsible for directing the CPD and its employee-agents, including Smith.  *Id.* at ¶¶ 7, 18.  Further, both Wright and Smith were agents of their shared principal, the City.  *Id.* at ¶¶ 5–7.  Accordingly, Wright cannot be a third-party interferor to Smith's business expectancy in his continued employment.

The Court rejects Smith's argument that the grievance panel determination somehow altered his relationship with Wright.  Pl.'s Mem. 20–21.  The panel's decision did not make Wright an outsider to Smith's alleged business expectancy or sever the parties' principal-agent relationship.  After Smith's reinstatement to the CPD, Wright continued serving as the Chief of Police, and Smith continued serving as a police officer, albeit on "restricted duty."  Compl. ¶¶ 57–65.  The agent continued to work under the direction of his principal, and both Smith and Wright continued to work under their principal, the City.

To circumvent this problem, Smith argues in his brief, but nowhere alleges in his complaint, that Smith's claim for tortious interference should be allowed to proceed because Wright acted outside the scope of employment.  Under Virginia law, an employee acting within the scope of employment cannot interfere with another employee's business expectancy.  *Koontz v. Jording*, No. 3:18cv380, 2019 WL 1339595, at *10 (E.D. Va. Mar. 25, 2019); *Rattner v. Chubb Nat'l Ins. Co.*, No. 1:17cv136, 2017 WL 11500149, at *2–3 (E.D. Va. Apr. 24, 2017).  Because Smith's tortious interference claims derives from Virginia law, the Court must also apply Virginia's definition for "scope of employment."  An act is within the scope of employment when:

> (1) it [is] something fairly and naturally incident to the business, and (2) if it [is] done while the servant was engaged upon the master's business and [is] done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from

> some external, independent, and personal motive on the part of the
> servant to do the act upon his own account.

*Emami v. Bolden*, 175 F. Supp. 3d 616, 620 (E.D. Va. 2016) (quoting *Sayles v. Piccadilly Cafeterias, Inc.*, 410 S.E.2d 632, 634 (Va. 1991) (citation omitted)).  Virginia courts generally "take a fairly broad view of scope of employment, and hold that even intentional torts may be within the scope of employment."  *Gutierrez de Martinez v. Drug Enf't Admin.*, 111 F.3d 1148, 1158 (4th Cir. 1997).  An agent's motivation in committing the alleged tortious interference "does not determine scope of employment under Virginia law."  *Emami*, 175 F. Supp. 3d at 621.  Instead, the relevant question is, "whether the [agent's] service itself, in which the tortious act was done, was within the ordinary course of such business."  *Id.*

In *Emami*,[16] the plaintiff alleged his supervisor tortiously interfered with plaintiff's employment by giving him a false, "unacceptable performance" review and "us[ing] deceit to get a higher-level supervisor . . . to ratify" the supervisor's decision to terminate plaintiff's employment.  *Id.* at 618, 621.  Plaintiff asserted his supervisor was "motivated out of pure malice toward [plaintiff] and did not aim to serve [his principal] in any way."  *Id.* at 621.  The Court held that the plaintiff's supervisor acted within the scope of his employment, explaining that "[a]t worst . . . this case involves a supervisor who, for simply personal reasons, wanted to get his subordinate fired and used improper means, perhaps even defamation, to reach that end.  Even if this is true, however, such conduct falls squarely within that supervisor's scope of employment under Virginia law."  *Id.*  Even if plaintiff's supervisor gave him a "negative, even deceptive, performance review," this act, or "service," is within the scope of employment of a supervisor charged with evaluating and supervising subordinate employees.  *Id.*; *see also Gina Chin & Assocs., Inc. v. First*

---

[16] *Emami* addressed the scope of employment issue in the context of a motion to dismiss for lack of subject matter jurisdiction.  175 F. Supp. 3d at 618.

*Union Bank*, 537 S.E.2d 573, 578–79 (Va. 2000) (finding a bank teller's criminal conduct in knowingly depositing fraudulent checks could lie within the scope of employment because "he was performing a normal function of a bank teller in accepting checks for deposit").

In *Koontz*, a Home Depot employee alleged her supervisors tortiously interfered with her employment, violating internal written policies by reprimanding plaintiff with profanity, failing to report the incident, and lying to and misleading colleagues and corporate officials.  2019 WL 1339595, at *11.  The Court found that violating internal policies would not, by itself, place an employee's conduct outside the scope of employment.  *Id.* (explaining that an employee may still be acting within the scope of employment while engaged in tortious behavior or in violation of administrative procedures).  The Court explained that the supervisor's actions—"[r]eprimanding employees, exercising discretion in reporting incidents, and discussing employment matters with corporate officials"—at their most basic level, constituted activities within the scope of employment.  *Id.*; *see also Rattner*, 2017 WL 11500149, at *2–3 (rejecting tortious interference claim where defendants acted within the scope of employment and noting that an act was clearly outside the scope of employment only if defendants' deviation from their principal's business was "a complete stepping aside from the employer's business that was in no way related to the employer's affairs and was completely contrary to the employer's instructions") (citation omitted).

The same reasoning applies here.  Incident to and in service of the performance of his duties as the Chief of Police for the City, the complaint alleges that Wright supervised Smith, assigned him duties, determined his eligibility for overtime and promotions, directed criminal and administrative investigations, made disciplinary determinations, communicated with the Commonwealth's Attorney about potential impeachment information, and testified in court about such matters.  Compl. ¶¶ 153–57.  These are among the tasks to be performed by the chief law

enforcement officer of a city.  *See* Va. Code § 15.2-1701 (describing the chief of police as the chief law enforcement officer of a locality having a police force).  These actions are not a "complete stepping aside" of the CPD's business; they are squarely within the scope of employment of one tasked with supervising and directing the department and its officers.  *Rattner*, 2017 WL 11500149, at *3.  Wright's motives, even if "intentional, willful, and malicious," Compl. ¶ 154, and committed with the objective of "adversely affect[ing] Smith's employment with the Department," do not remove his actions from within the scope of employment because Wright's services, or acts, were "within the ordinary course" of business for a police chief.  *Emami*, 175 F. Supp. 3d at 621.  Accordingly, Wright was acting within the scope of his employment and did not interfere with Smith's business expectancy in his employment.

Because there has been no interference, the Court need not consider whether Wright employed "improper" means or methods. [17]

For these reasons, Wright's motion to dismiss Smith's tortious interference claim should be **GRANTED**.

---

[17] A line of cases in the Eastern District of Virginia reject tortious interference claims in the absence of a competitive relationship between the parties.  *See, e.g.*, *17th St. Assoc.*, 373 F. Supp. at 600.  As another court has noted, however, "the Virginia Supreme Court has never stated that a competitive relationship between the parties is a prerequisite to a tortious interference claim like that alleged herein."  *Livia Prop.*, 2015 WL 4711585, at *6; *see also Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015) (noting but declining to address the argument that the third element of tortious interference requires "direct competitive interference with a contract" and that one who is not a competitor cannot be liable for tortious interference).  Because the Court concludes that Wright did not intentionally interfere in Smith's business expectancy, no need exists to address whether the parties were required to be engaged in a competitive relationship.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that defendants' motion to dismiss, ECF No. 8, be **GRANTED in part and DENIED in part** as follows:

(1)    Defendants' motion to dismiss count one's section 1983 claim against the City should be **DENIED as MOOT**, as Smith has agreed to withdraw that claim against the City;

(2)    Defendants' motion to dismiss count one's official capacity claim against Wright as duplicative should be **DENIED**;

(3)    Defendants' motion to dismiss count one for failure to allege a valid property interest should be **GRANTED**;

(4)    Defendants' motion to dismiss count one as barred by the statute of limitations should be **DENIED in part and GRANTED in part** as follows:

    (a)    **DENIED** as to Wright's October 2017 and January 17, June 11, and September 2018, refusals to consider Smith for promotion;

    (b)    **GRANTED** as to actions occurring prior to the August 31, 2015 grievance panel decision and as to Wright's placement of Smith on restricted duty on May 27, 2016;

(5)    Defendants' motion to dismiss count one as barred by the doctrine of collateral estoppel should be **DENIED**; and

(6)    Wright's motion to dismiss count two's tortious interference with a business expectancy claim should be **GRANTED**.

## V.     REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.     A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____
/s/
Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
May 6, 2020